United States of America v. Mohamed Toure and Denise Cross Toure. And first we'll hear from Mr. Illick. Whenever you're ready, Mr. Illick. Thank you. May it please the court. My name is Niles Illick and I represent the appellants Denise Cross Toure and Mohamed Toure. I'm also a father, and as a father, one of the hardest things I do is to apply the right amount of pressure to my five-year-old daughter to get her to do the things she needs to do to succeed. In doing this, what we might call responsible parenting, I've probably violated the forced labor act. In our brief, we've asked this court to find the... With respect, I mean, it's a little offensive to Judge Costa, I certainly understand that. And the government has certainly done a good job laying out the facts of the case. But when we're talking about an over-breath argument, we're talking not only about the facts of the individual case, but also the legitimate conduct that is swept up in it. And when we look at the legitimate conduct that can be swept up... Okay, so over-breaths about the First Amendment. So first tell us how this is speech. I mean, the Seventh Circuit, Judge Wood says this isn't really regulating speech. And Judge Costa, I think that we've argued that it is about association, not so much about speech. So it's the decision to bring people into a family, the decision to associate with employers or employees in a small or intimate employment setting, much more so than it is speech. So we have asked this court to find forced labor act unconstitutional because it's overbroad and or vague, because it infringes on this First Amendment right to association. This court should do so... Do you have a facial challenge only, or do you also have an as applied challenge? And also, did you preserve both of... If you have both, did you preserve both of those in the court, in the district court? Judge Elrod, this is strictly a facial challenge. Strictly a facial challenge, and it was not brought up in the district court. It was not raised in the district court, so it is going to be brought up on plain error review. So our contention is that it's preserved for error, but we must satisfy the plain error review. And we'll certainly argue why we do that in a minute as soon as we get through the elements of why we think the statute itself is unconstitutional. But that's kind of hard to do, plain error, when other circuits have expressly held that this is not unconstitutional, isn't it? And that's certainly a challenge that we have, but I think there are a couple of different answers for that. First, in considering that other circuits have held that it is constitutional, they've done so in the context of speech. They haven't done so in the context of association. And I think when we look at this very specific... We often think of the First Amendment as dealing just with speech, but of course it has five protections in it, one of them being association. And when we look at this statute in the context of association, and I don't think that's been brought up before in any circuit, I think we come to a different answer. And we come to a different answer because of this really broad definition of serious harm. And... I know you can bring an over-breath challenge for speech. It doesn't have to be for this statute, but what's your best case saying you apply over-breath to a violation of an associational right? I... Judge Costa, I can't think of the case off the top of my head, and I apologize for that, but I can't think of it. But I will certainly provide that to the court. And it's certainly something we looked at, and it's certainly something we believe we can do inside of the First Amendment. Now, it certainly is true that most First Amendment challenges are association challenges, but I think that we can look at... I think we can look at this in the context of over-breath in the context of association. So, if I can turn quickly to the argument about why we consider it... Well, first, let me say that I think everyone here agrees that the facts are kind of ugly. This is a difficult, hard case. But we also think it's a case that changes and amends one of the most important statutes we have. And we suggest that that can really be done with the addition of an affirmative defense to this statute. So, this court has an opportunity to explain to Congress that this important statute can be rendered constitutional if the court believes it's unconstitutional by adding an affirmative defense that would allow a that is widely considered to be socially acceptable and to have the conduct then be protected from criminal liability. And as we've said, our real difficulty here is with the definition of serious harm. And when we talk about serious harm, what we're talking about is a definition that says any harm, whether that harm is reputational, financial, physical, emotional, et cetera, any harm that's necessary to get a reasonable person in the same or similar as the victim to do the labor. We contend that this is overbroad. And we've provided the court with several hypothetical examples of that, from a parent with a child, a parent with a teenager, employers. We've even mentioned judges in a way that people acting responsibly may have violated the forced labor act. And we think that this falls... This isn't a judge working her law too much. And I thought for your vagueness challenge, doesn't the statute have to be vague as applied to your conduct? Yes. I think Holder makes it clear that you can apply... Well, yes and no, Judge Costa. You can apply hypotheticals when you get into the First Amendment. But when you get to conduct that the court considers to be clearly prohibited by the that maybe the facts aren't clearly prohibited under Holder because of the opinion in Tovine and the Sixth Circuit's explanation of the vagueness problems here. But when we're talking about an overbreath, we're certainly looking to a broader range of... To a broader range of conduct. And I think we can see this when we look back in the history of this statute to the Kosominski case, and I may be pronouncing that incorrectly, out of the Supreme Court where the statute that initially prohibited forced labor was declared unconstitutional. And the court went directly to things such as parents having their children work for them. And I think even though Kosominski has been overruled by statute, its reasoning still applies. And I think we can also look to the Stevens opinion. Now, Stevens was about speech much more than it was about association. But when we look at Stevens, we see that an eight-to-one opinion from the Supreme Court where the chief wrote the opinion. And Chief Justice Roberts found the objective to Section 48 to create a criminal prohibition of alarming breath. And he was right. And what he was really talking about was a statute that didn't really look to these sort of crush videos, the really gruesome, ugly things that the statute was designed to prevent, but look to the broad array of legal conduct that the statute criminalized. And Chief Justice Roberts went to the fact that the statute went so far as to potentially criminalize hunting magazines. And in an eight-to-one opinion, where Justice Alito was the only one who dissented, and he dissented because he thought it should have been part of the statute rather than the whole statute, the Supreme Court found it overly broad. And we think that's true here. And we think it's even a clearer case here because the statute in this instance, as opposed to Stevens, has an even broader application going to really what we consider to be the fundamental relationships in our lives. In other words, the decision to bring a child into a family, whether it's an adopted child, a child from another family, or brought into your family biologically, the decision to bring someone into work... There's a fundamental right to enslave a child? No, absolutely not, Judge Costa. I don't believe that at all. The fundamental right in my mind is to have the child and to raise that child appropriately and to not... Which would be sending them to school, putting them on your health care plan, all things that were not done in this case. And Judge Costa, I'm not here to condone or ask the court to condone the specific conduct in this case. What I'm asking the court to do is to look to the language of the statute and to ask whether that language creates a problem across the board. In other words, asking my child to pick up her Lego, an example that came from my own life, she didn't do it, so I put the Lego away. Does that fall under the definition of serious harm? And I think that when we look at the statute... Who would consider that to be serious harm? Well, it's from the perspective of the victim. In that case, the victim was a four-year-old... That has to be reasonable. Well, a reasonable victim in the same or similar circumstances as the person who does it. So a reasonable four-year-old probably considers that to be sufficient harm in order to do it. But if you don't like that example, Judge Costa, we could look to other examples that we provided. And that is, say, a employee who's asked to work late at night. He doesn't want to work late or an au pair who wants to work in the morning. And if they refuse to do so, they suffer either financial or You've suffered either financial, emotional, reputational harm. Not physical harm, of course, but a type of harm and enough of a harm to satisfy the definition of serious harm. And what I'm trying to urge the court to do is to see the breadth of the problem with serious harm and to understand that the solution in my mind is to urge Congress to add an affirmative defense. Everyone agrees that this is a fundamentally important statute, but as it's written, it's far too encompassing. It encompasses way too much and it should be a jury issue. So we should be able to ask a jury, with what this person has been charged for, is that sort of the ordinary pressure that's widely considered to be socially acceptable? And if so, then they're not going to guilty of this offense. But if, as you pointed out, Judge. Yes, Judge Elrod. I am really confused because this is the second time you've said you need to write something to urge Congress to do something. Are you saying that you think you lose, but you want us to write something in the opinion that points out that this is troubling and could be remedied? Not at all. Are you, I mean, why would we be writing a missive to Congress? I don't understand your argument in that way. Sure. And thank you for asking Judge Elrod. My answer is no matter how you come out of this, and I certainly don't, I don't think it's a losing argument. I think it's an appropriate and proper argument if you can step away from the facts and look at the law generally. But what I think this case also does is it provides this court with an opportunity to talk to Congress, a discussion between the branches of how to remedy a constitutionally deficient statute. So if the court reaches the position that this is unconstitutional, it doesn't mean that the court just says, well, it's gone. The court has an opportunity to tell Congress, look, the fix isn't that hard. This might work with an affirmative defense. One remedy for this would be an affirmative defense. So I'm trying to give the court not only a problem, but a solution to that problem. I have two more questions. Yes, Judge Elrod. The first one, I don't mean it in a flippant manner, but you've brought up your own hypotheticals about workers and Legos and all kinds of things. So as applied to Cinderella, is this statute unconstitutional? I'm doing all this housework, not getting to have the nice rooms with her sisters and not getting to go to the ball and not being being put with the animals. You know the Cinderella story. Is that a violation or is that a and the only reason I'm asking this is because you want us to test this facially. And that's a well-known example of a situation of being mistreated in a family. And then the second question I have, are you still challenging the restitution, even though it's no longer under the MVRA? And is it just as to the amount if so? OK, first thing first, and thank you for getting me to a different issue also. But Judge Elrod, the first issue is I don't. I haven't considered Cinderella, but I think when we look at a situation like Cinderella that we could say that, no, it's not unconstitutional in those circumstances. Now, I think where you're leading me is that in most instances, a facial challenge has to be unconstitutional in all respects. But that's not true in the context of the First Amendment. In the First Amendment, it could be unconstitutional, especially in an overbreadth challenge. It can be unconstitutional in most applications. You don't have to meet every single one or you don't know whether. Yes, it is true for associational. Yes. And I will provide the 28J letter that provides that citation to the court. Why isn't it unconstitutional with regard to Cinderella? Well, I don't want to get, I mean, I haven't read Cinderella to my five-year-old. It's been a while since I looked at it. But I think when you take a severe scenario, we recognize the importance of a need for this statute. This statute has a legitimate role in American society and based on American history has an important purpose. And I don't dispute that at all. What I object to is the breadth of it and the vagueness of it. But with Cinderella, let's just take the argument and say that, look, she's really been quite mistreated. It's to the extent that it can be applied. So, in other words, in my mind, while I haven't seen it applied that way, it can be applied to an enormous amount of otherwise legitimate conduct. And when that happens, I think we have a constitutional problem. Now, the answer to your second question, Judge we're still challenging the restitution amount. And I realize it's been remanded and come back. And the real argument there is we think whether it's under the MVRA or the TVPA that the court had an obligation to explain its restitution amount. Now, it obviously had a problem with 96 hours. It didn't accept hours. And the court said something like, given the arguments or based on what I've heard, I think 40 hours is enough. But with the inconsistency that happened here, we really think that the court needed to explain itself so that we could have some basis for a reason to pellet review on that amount of restitution. I see my time has run out. And if there are no further questions, I'll yield the floor. Thank you. Thank you, sir. Ms. Lamb. Good afternoon and may it please the court. This is a case about holding a young woman in domestic servitude for 16 years. None of defendants arguments on appeal undermine their convictions or sentences, which this court should affirm. First defendants belated challenge to the constitutionality of the forced labor statutes term serious harm fails on plain error review. No court has found this term this term unconstitutional. And indeed, as Judge Elrod previously pointed out, the only court of appeals that has held on this issue has in fact found the statute to be constitutional. And it was no error, therefore, for the district court not to raise sua sponte, the ill founded constitutional questions that defendants now assert. The forced labor statute criminalizes the knowing procurement of labor or services through well-defined prohibited means, including serious harm. The statute is not vague as applied to defendants, cruel and abusive treatment of DD, nor is it overbroad as it's plainly legitimate sweep dwarfs any hypothetical applications to constitutionally protected activity. Indeed, the scenarios that defendants council has highlighted today fall almost exclusively, exclusively outside of the realm of what the first amendment right to association might conceivably be considered to encompass the relationship between employer and employee. For example, thus defendants first argument clearly fails, even if this court chooses to reach its merits, which the court need not do on plain error review. Unless that's your argument. Certainly those are many of the points I wish to raise regarding the constitutionality of the forced labor statute. I am very happy to entertain any questions the court might have on that issue. And I'm happy to move on to the second issue raised in defendants brief, which is the question of the sufficiency of the evidence to support Muhammad Torres forced labor conviction. And indeed, there was ample evidence for a rational jury to find beyond a reasonable doubt that Muhammad Tory committed forced labor. He was personally involved in obtaining DD's labor by threats of serious harm or by a scheme plan or pattern to lead DD to believe that she would face serious harm unless she worked. Indeed, his actions included picking her up from the airport when she arrived alone from Africa as a child, eating and helping to beat her and verbally abuse her shaving her head, allowing her to remain in exile in the park as a young child until the police brought her home and he evaded their questioning. He took her to a dental clinic to have one of her missing three adult teeth extracted rather than to the family dentist, and he paid cash to do so. And indeed, he was an adult in a household where he and his children enjoyed meals prepared by a loan after the family was done, who took his kids to school but couldn't read herself and who slept on the floor or on mattresses in the children's rooms. His actions, his words saying that she was given to the family and that she escaped when she left and his presence in the home clearly established sufficient evidence for the jury to find that he knowingly procured DD's labor by means of serious harm. And unless the court has questions on that issue, I'm happy to turn to the jury instruction, which is the third issue raised. I have a question. Now that you're turning to the harboring counts, the jury instruction is about the harboring counts, right? Yes. You know, this whole first issue is the, you know, the constitutional issue. And I understand we have to decide it because we were convicted. They were convicted of that. It's something we have to look at seriously and decide. But it isn't. It has nothing to do with the for the harboring counts, right? I mean, even if we were to agree that the count one goes away, there's still the harboring convictions, right? Well, to be clear, count one here was forced labor conspiracy, and the Tories were acquitted on that account to the if the forced labor go, if we agree with them that it's completely unconstitutional, and we wipe that conviction off the book, there still have the harboring. I guess my question is, are there is the sentence going to be different if it's just harboring? Um, it is I we have not taken I haven't taken a position on that here in our briefing that wasn't raised. Certainly, I imagine I mean, resentencing would be necessary, certainly. But of course, I would emphasize first that defendants haven't raised any good grounds, particularly on plain error review to wipe out those forced labor convictions, as the statute is clearly constitutional as applied in this case and on its face as well. So turning to the specific issue of the jury instruction on harboring, the district court properly exercised its discretion in instructing the jury on alien harboring because it followed this court's pattern instruction, which accurately defined the offense. The court did not air by using some of the language that defendants proposed adding to the instruction, but by omitting a single phrase that was already encompassed in it. Indeed, the court's pattern instruction well captures in its second and fourth elements, the notion that harboring means to shield harbor or conceal something from detection consistent with the law of this circuit. And it was therefore no abuse of discretion for the district court not to include the additional language defendants proposed that made essentially the same point that the instructions already covered, but in a manner that the court has not clearly endorsed and may even conflict with its precedent. So for those reasons, there was no abuse of discretion in instructing the jury on alien harboring. Finally, I'll turn to the question of restitution and the district court was well within its discretion in setting the restitution amount based on DD performing 40 hour work weeks. The court made sufficient findings based on the record. And in fact, substantially adopted defendants arguments below that DD should be credited for less than 96.25 hours per week, which is the probation and the government had advocated. Indeed, to my knowledge, defendants did not advocate some other number. The record, moreover, the trial and sentencing records supported at least this amount. And the record showed that DD worked for the Tories nearly every day for 16 years and that her days were filled with childcare, cooking, cleaning and household and yard maintenance and few breaks. So defendants cannot reasonably claim there was an abuse of discretion under these circumstances. Unless the court has any other questions on any of the issues raised in the briefs, um, in the absence of any error in the district court, this court should affirm defendant's convictions and sentences. Thank you, Miss Lamb. Mr. Ehrlich, you have three minutes on the bubble. We can't hear you. Can you hear me now, Judge Dennis? Thank you. Sorry about that. One of the hardest things about this case are that the facts are so emotionally evocative. They're reprehensible. But we saw that in the Tovine case. The judge specifically, Judge Rogers specifically talked about how awful the specific facts of those cases were. That case was, but she then turned to the law. And when she turned to the law, she found that the forced labor act could not apply in that circumstance without making federal criminals of almost all responsible parents and guardians in the United States. And it's our contention that the same facts and law and application apply here. And that when we step away from the individual facts of this case, and Tovine was a sufficiency of the evidence case, not a constitutional case. But when we step away from the specific and repugnant facts of this case and we look to the statute and to what the definition of serious harm is, this statute, however important it is, has a serious constitutional problem. And as Judge Elrod and I discussed, I think it's a constitutional problem that has a relatively clean remedy. Getting Congress to do anything is not an easy thing to do. But here, the addition of a affirmative defense that says you're not criminally responsible if it is this sort of conduct that we recognize as socially useful and appropriate fixes the deficiencies in the statute. And with that, we asked the court to find the forced labor act unconstitutional. We asked the court to find based on the reasoning and of forced labor. We also, although we didn't discuss it, asked the court to find that the definition of harboring in the charge was insufficient and inconsistent with this court's precedent and to remand to the district court. In your brief, you say you concluded your constitutional challenge. I think first you say, well, you should just throw out the conviction, but then you say or else remand for a new trial. If it is unconstitutional, why would we remand the forced labor? Judge Costa, that would have been an error. I didn't see that when I reread it, and I apologize for that. But obviously, if it's unconstitutional, it's just thrown out. Thanks. Thank you. Okay, that concludes the argument in this case. Take under advisement and